UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| E&T ELECTRIC LLC, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 24-3377 (RC) |
| | : | | |
| v. | : | Re Document No.: | 4 |
| | : | | |
| JULIE SU, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### I.  INTRODUCTION

This matter comes before the Court on Plaintiff E&T Electric LLC's motion for a preliminary injunction.  "Plaintiff" applied for a temporary labor certification for twenty-five network cable installers under the Department of Labor's H-2B visa program because of a peakload need created by the existence of a new, temporary contract.  An Office of Foreign Labor Certification certifying officer issued a notice of deficiency, Plaintiff responded to the notice, and the certifying officer concluded that Plaintiff's response did not cure the deficiency.  The Board of Alien Labor Certification Appeals ("Board") reviewed the certifying officer's denial and affirmed the decision.  Plaintiff now seeks an order for a preliminary injunction ordering Julie Su, in her official capacity as the Acting Secretary of Labor, the Board, and the Chicago National Processing Center ("CO") (collectively, "Defendants") to set aside the Board's affirmance.  In its motion for a preliminary injunction, Plaintiff also requests that the Court issue a notice of acceptance and order the agency to continue processing Plaintiff's application.  For the following reasons, the Court denies Plaintiff's motion for a preliminary injunction.

## II.  REGULATORY BACKGROUND

The H-2B visa classification program applies to workers "coming temporarily to the United States to perform . . . temporary [non-agricultural] service or labor if unemployed persons capable of performing such service or labor cannot be found in this country[.]"  8 U.S.C. § 1101(a)(15)(H)(ii)(b).  Employers seeking to hire H-2B workers are required to obtain a temporary labor certification from the Secretary of Labor, which establishes that United States workers capable of performing the labor are not available and that the employment of foreign workers will not adversely affect the wages and working conditions of similarly situated U.S. workers.  *See* 8 C.F.R. § 214.2(h)(6)(iii)(A).  As part of the Department of Labor ("DOL")'s certification process, employers must obtain a "Prevailing Wage Determination" from DOL for the position(s) for which they seek to employ foreign workers.  20 C.F.R. § 655.10.  The employer must agree that it will pay H-2B workers and U.S. workers a wage that "equals or exceeds the highest of the prevailing wage or Federal minimum wage, State minimum wage, or local minimum wage."  29 C.F.R. § 503.16(a)(1).

The application must include documentation to support the number of workers requested and the duration of their employment.  8 U.S.C. § 1101(a)(15)(H)(ii)(b); 8 C.F.R. § 214.2(h)(6); 20 C.F.R. § 655.6(b).  A Certifying Officer in the DOL Office of Foreign Labor Certification reviews the application and, if further information is required, may issue a Notice of Deficiency to the employer.  20 C.F.R. § 655.31.  "If the Certifying Officer grants the certification to the employer, then the sponsoring employer may use that certification to file an I-129 Petition for Nonimmigrant Worker with United States Citizenship and Immigration Services [] requesting H-2B status for the number of workers certified by DOL."  *See Grass Work Lawn Care v. Acosta*, 2019 WL 1981087 *1 (D.D.C. May 3, 2019).  However, if the Certifying Officer denies the

application, the employer may request review of that decision by an Administrative Law Judge at DOL's Board of Alien Labor Certification Appeals. 20 C.F.R. § 655.61. The Immigration and Nationality Act permits 66,000 H-2B nonimmigrant visas to be issued each fiscal year. *See* 8 U.S.C. § 1184(g)(1)(B), (g)(10).

### III.  FACTUAL AND PROCEDURAL BACKGROUND

In August 2024, Plaintiff applied to the Department's Employment and Training Administration for a temporary labor certification. Compl. ¶¶ 9–10, ECF No. 1. Plaintiff's application requested certification for twenty-five workers from November 15, 2024 through August 14, 2025, alleging that it needed the workers under the H-2B program because a new, temporary contract created a peakload need.[1] *Id*. ¶ 12. In September 2024, an Office of Foreign Labor Certification certifying officer issued a notice of deficiency because (1) Plaintiff did not establish that the job opportunity was temporary pursuant to 20 C.F.R. § 655.66(a)–(b) and (2) Plaintiff failed to demonstrate the temporary need for the requested number of workers. *Id*. a¶ 14. Two weeks later, although Plaintiff responded to the notice of deficiency, the certifying officer concluded that Plaintiff's response did not address the deficiency with respect to its demonstration that the job opportunity was temporary. *Id*. ¶¶ 16; 28. Plaintiff appealed that decision to the Board. *Id.* ¶ 29.

In November 2024, after reviewing the certifying officer's determination, the Board issued its decision. Ex. B to Compl. ("Decision"), ECF No. 1-2. The Board cited to 8 C.F.R. § 214.2(h)(6)(ii)(A) to explain that temporary labor under the H-2B classification refers to jobs

---

[1] To show a peakload need, an employer must "establish that it regularly employs permanent workers to perform the services or labor at the place of employment and that it needs to supplement its permanent staff at the place of employment on a temporary basis due to a seasonal or short-term demand and that the temporary additions to staff will not become a part of the [employer's] regular operation." *See* 8 CFR 214.2(h)(6)(ii)(B)(3).

with a temporary need, regardless of whether the job itself is permanent. *Id.* at 9–12. The Board emphasized that Plaintiff had to prove that its need for temporary workers was due to seasonal or short-term demand and that the additional workers would not become part of the regular workforce. Decision at 10; *see also* 8 C.F.R. § 214.2(h)(6)(ii)(B)(2). Despite Plaintiff's claims of needing additional staff due to a large contract and a labor shortage in rural Missouri, the Board upheld the certifying officer's decision, noting that a single contract is typically insufficient to demonstrate a peakload need, as established in prior Board decisions. *See* Decision at 12; 14. The Board agreed that the certifying officer rightly requested more evidence, such as past projects and payroll data, which Plaintiff failed to provide, as the list of projects did not show a clear peakload need. *Id.* at 13–14.

Although Plaintiff moved for reconsideration of the Board's Decision, the Board denied it concluding that the certifying officer sufficiently established that Plaintiff's documentation did not establish its peakload need. Compl. ¶ 61. Earlier this month, Plaintiff filed a complaint in this Court seeking to compel the certifying officer to issue a notice of acceptance with respect to Plaintiff's application for temporary labor certification. *See generally* Compl. Two days later, Plaintiff filed a motion for preliminary injunction requesting that the Court set aside the Board's ruling, issue a notice of acceptance, and order the agency to process Plaintiff's application for temporary labor certification. App. for Prelim. Inj. & Expedited H'rg Within 21 Days, ECF No. 4; Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. ("Pl.'s Mem.") at 20–21, ECF No. 4-2. Defendants filed an opposition. Defs.' Opp'n to Pl.s' Mot. for Prelim. Inj., ECF No. 6.

## IV. LEGAL STANDARD

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief.'" *John Doe Co. v. Consumer Fin. Prot.*

*Bureau*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (alteration in original) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "A plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. When "the Government is the opposing party," the determination of the third and fourth factors regarding "harm to the opposing party" and "the public interest" merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "Of course, the movant carries the burden of persua[ding]" the Court that these factors merit preliminary relief, *Fla. EB5 Invs., LLC v. Wolf*, 443 F. Supp. 3d 7, 11 (D.D.C. 2020) (citing *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004)), and must do so by making a "clear showing," *Cobell*, 391 F.3d at 258.

Of these factors, likelihood of success on the merits and irreparable harm are particularly crucial, and a court "may deny a motion for preliminary injunction, without further inquiry, upon finding that a plaintiff is unable to show either irreparable injury or a likelihood of success on the merits." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 26 (D.D.C. 2016) (emphasis in original). "The requirement of showing irreparable harm is an independent requirement: if a plaintiff does not demonstrate that it is likely to suffer irreparable harm in the absence of preliminary relief, the Court may deny the motion without considering the other factors." *Fla. EB5 Invs., LLC*, 443 F. Supp. 3d at 11; *see also Acosta v. D.C. Gov't*, No. 20-cv-1189, 2020 WL 2934820, at *2 (D.D.C. June 3, 2020).

"The standard for irreparable harm is particularly high in the D.C. Circuit. Plaintiffs have the considerable burden of proving that their purported injuries are certain, great and actual—not theoretical—and imminent, creating a clear and present need for extraordinary equitable relief to

prevent harm." *Fisheries Survival Fund v. Jewell*, 236 F. Supp. 3d 332, 336 (D.D.C. 2017) (internal quotation marks and citations omitted). "In addition, the certain and immediate harm that a movant alleges must also be truly irreparable in the sense that it is beyond remediation." *Id*. (internal quotation marks and citations omitted). Plaintiffs must "substantiate" their claim of irreparable harm with "proof." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

## V.  ANALYSIS

In this case, Plaintiff claims that for each day that it cannot perform under its contract it will lose "revenue that [it] can never recoup because of the CO's sovereign immunity." Pl.'s Mem. at 18–19. It explains that the total revenue it was supposed to receive under the contract is over twelve million dollars, but the exact daily revenue loss is uncertain. *Id*. at 19 n.11. If the services are not started soon, Plaintiff claims that the contract will likely be canceled, resulting in the complete loss of the revenue. *Id*.

To show irreparable harm, the D.C. Circuit requires that the movant demonstrate an injury that is "both certain and great . . . of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm" and that the injury be "beyond remediation." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (citations, emphasis, internal quotations omitted). The movant must also show that the alleged harm "will directly result from the action which the movant seeks to enjoin." *Wis. Gas Co.*, 758 F.2d at 674. The Court finds that Plaintiff has not met this standard.

Plaintiff's sole reliance on economic harm for its irreparable harm goes against the "well[-]settled" principle "that economic loss does not, in and of itself, constitute irreparable harm" because "the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of

irreparable harm." *Id.* (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)); *see also Davenport v. Int'l Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 367 (D.C. Cir. 1999) ("[T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (alteration in original))). Economic loss does not typically constitute irreparable harm because "economic injuries are generally reparable through monetary damages following the conclusion of litigation." *Xioami Corp. v. Dep't of Defense*, No. 21-cv-280, 2021 WL 950144, at *10 (D.D.C. Mar. 12, 2021). "However, when a plaintiff's alleged damages are unrecoverable, such as here, due to the sovereign immunity enjoyed by Defendants, courts have recognized that unrecoverable economic loss can indeed constitute irreparable harm." *Id.* (citing *Sagarwala v. Cissna*, No. 18-cv-2860, 2019 WL 1649943, at *2 (D.D.C. Apr. 16, 2019); *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 114 (D.D.C. 2015); *Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*, 840 F. Supp. 2d 327, 335 (D.D.C. 2012); *Clarke v. Off. of Fed. Hous. Enter. Oversight*, 355 F. Supp. 2d 56, 65–66 (D.D.C. 2004)).

Although damages do not become *per se* irreparable, under Plaintiff's theory of irreparable harm "[a]ny movant that could show any damages against an agency with sovereign immunity—even as little as $1—would satisfy the standard." *Air Transp. Ass'n of Am., Inc.*, 840 F. Supp. 2d at 335. That is not the law. "[T]he wiser formula requires that the economic harm be significant, even where it is irretrievable because a defendant has sovereign immunity." *Id.*; *see also Sagarwala*, 2019 WL 1649943, at *3. A plaintiff must make "a strong showing that the economic loss would significantly damage its business above and beyond a simple diminution in profits, for example when the loss threatens the very existence of the movant's business." *Nat'l Council of Agric. Emps. v. Dep't of Lab.*, 22-cv-3569, 2023 WL 2043149, at *3 (D.D.C. Feb. 16,

7

2023) (internal quotation omitted). The Court finds that Plaintiff has not made such a "strong showing." *See id*.

Plaintiff's claim that it will suffer a loss above and beyond a "diminution in profits" is only substantiated by its argument that it is losing an unspecified amount of "additional revenues." Pl.'s Mem. at 17–19. The Court finds that Plaintiff's sole assertion is not persuasive enough to satisfy the applicable standard. *See Nat'l Council of Agric. Emps.*, 2023 WL 2043149, at *7 (holding that the plaintiff's losses were insufficient to establish irreparable harm although it provided the specific losses that its member would suffer); *see also Arriva Med. LLC v. Dep't of Health & Hum. Servs.*, 239 F. Supp. 3d 266, 281–82 (D.D.C. 2017) (holding that the plaintiff failed to show irreparable injury although it submitted a number of affidavits testifying that a government action could put it out of business). Here, Plaintiff acknowledges that it did not provide evidence that details the loss of profits, and it further fails to place any such vaguely asserted loss of profits in the context of how the loss of profits from that single project would affect its overall business. As required by 8 C.F.R. § 214.2(h)(6)(iii), Plaintiff also fails to substantiate its inability to hire U.S. workers to perform the work to avoid the loss of profits. As such, the Court finds that Plaintiff has failed to demonstrate that it will suffer irreparable harm absent an emergency injunction from this Court. "Because the Court finds that Plaintiff[s] ha[ve] not demonstrated irreparable harm, the Court denies the motion for preliminary injunction without consideration of the other factors relevant to preliminary injunctive relief." *E.g., Acosta*, 2020 WL 2934820, at *2 (citing *Farris v. Rice*, 453 F. Supp. 2d 76, 79 (D.D.C. 2006) (denying injunctive relief on failure to demonstrate irreparable harm without analysis of the other factors)).

## VI.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for preliminary injunction (ECF No. 4) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  December 23, 2024                                             RUDOLPH CONTRERAS
                                                                                              United States District Judge